ORIGINAL

# In the United States Court of Federal Claims

No. 16-1006C

(Filed: December 8, 2016)

FILED
DEC - 8 2016
U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| ****************************************<br>JULIE BEBERMAN,<br>　　　　　　　Plaintiff,<br>v.<br>UNITED STATES,<br>　　　　　　　Defendant.<br>**************************************** | Claim under the Equal Pay Act of 1963, alleging gender-based discrimination; 29 U.S.C. § 206(d); previously-filed pending suit in Federal District Court and on appeal; application of 28 U.S.C. § 1500 |

Julie Beberman, *pro se*, Arlington, Virginia.

Agatha Koprowski, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Jessica Thibodeau, Attorney Adviser, Office of the Legal Adviser, United States Department of State, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

　　Plaintiff, Julie Beberman ("Ms. Beberman"), an employee of the United States Department of State ("State Department"), brings this action under the Equal Pay Act of 1963 ("Equal Pay Act"), Pub. L. No. 88-38, § 3(d), 77 Stat. 56 (codified at 29 U.S.C. § 206(d)), alleging gender-based discrimination in pay and benefits. Compl. ¶¶ 1, 3, 21. Ms. Beberman alleges that the government discriminated against her by paying her less and providing her with fewer benefits than those received by a similar male employee within the State Department. *See* Compl. ¶¶ 9-23. The government seeks to dismiss Ms. Beberman's complaint pursuant to 28 U.S.C. § 1500 on the ground that prior to bringing this suit, Ms. Beberman filed an action against the United States in the United States District Court for the District of the Virgin Islands and an appeal in the United States Court of Appeals for the Third Circuit from the district court's denial of preliminary injunctive relief, both of which remain pending. *See* Def.'s Mot. to Dismiss

7014 1200 0000 9093 9935

Pursuant to 28 U.S.C. § 1500 or, in the Alternative, Mot. to Stay ("Def.'s Mot.") at 6-9, ECF No. 6. Alternatively, the government requests that the court stay Ms. Beberman's suit until her pending claims in the district court and court of appeals are resolved. *Id.* at 9-10.

For the reasons stated, the government's motion to dismiss pursuant to 28 U.S.C. § 1500 is granted.

## BACKGROUND

### A. Ms. Beberman's Suit in This Court

Ms. Beberman is employed by the State Department as a non-tenured member of the Foreign Service. Compl. ¶¶ 3, 5. Upon entry to the Foreign Service, employees serve under a limited appointment for a trial period. 22 U.S.C. § 3946(a). A commissioning and tenure board recommends whether an employee should receive tenure and a career appointment. *See* 22 U.S.C. § 3946(b); 3 Foreign Affairs Manual § 2245 (available at https://fam.state.gov); Def.'s Mot. at 1-2. In March 2016, Ms. Beberman was serving at Embassy Malabo in Equatorial Guinea, where she allegedly received various benefits, including "overseas comparability pay, hardship pay, service-needs differential, a cost of living allowance, housing, substantial overtime compensation, and . . . the student loan repayment program." Compl. ¶¶ 6-8. On March 27, 2016, Ms. Beberman's limited career appointment expired without a recommendation of tenure. Compl. ¶ 6. Ms. Beberman challenged the denial of tenure before the Foreign Service Grievance Board and received interim relief. *See* Def.'s Mot. at 2; Pl.'s Opp'n to Mot. to Dismiss or for a Stay ("Pl.'s Opp'n") at 3, ECF No. 7. Pursuant to the State Department's internal standard operating procedure regarding mandatory separations, *see* Def.'s Mot. App. A21, A27-A28,[1] the State Department placed Ms. Beberman on "separation orders" and directed her to return to Washington, D.C. before the completion of her assignment in Equatorial Guinea. Compl. ¶ 9.[2] Ms. Beberman alleges that she did not receive an overnight stop, a temporary quarters service allowance, or the opportunity to retrieve her household effects. Compl. ¶ 10. Additionally, Ms. Beberman alleges that she has not received "Washington locality pay or a transit subsidy" since returning to Washington, D.C. Compl. ¶ 11.[3]

---

[1] The appendix to the government's motion consists of the State Department's internal standard operating procedure and ten documents related to Ms. Beberman's suit in the district court and appeal in the Third Circuit, tallying 245 sequentially numbered pages. The appendix will be cited as "Def.'s Mot. App. A__," showing the pertinent page number.

[2] In addition to alleging violations of the Equal Pay Act, Ms. Beberman alleges that the State Department's separation orders violated 22 U.S.C. § 4136, 22 C.F.R. § 904.4(a), and 3 Foreign Affairs Manual § 4453(a), all of which pertain to proceedings before the Foreign Service Grievance Board. Compl. ¶ 9.

[3] On December 1, 2016, the government filed a Notice of Related Agency Action, ECF No. 10, advising that the State Department had changed its policies and procedures regarding mandatory separations. As a result, the Department has now placed Ms. Beberman on orders for a permanent change of station to Washington, D.C., retroactive to April 11, 2016, the first working day after Ms. Beberman departed her assignment in Malabo, Equatorial Guinea. *See*

Ms. Beberman brought this action on August 15, 2016 under the Equal Pay Act, 29 U.S.C. § 206(d)(1). Compl. ¶ 1.[4] Ms. Beberman alleges that the government discriminated against her on the basis of sex by paying her at a lower rate and providing her with fewer benefits than were provided to an equally-ranked and situated male employee. Compl. ¶¶ 21-23. Specifically, Ms. Beberman alleges that a male Foreign Service employee's limited appointment also terminated on March 27, 2016 without a recommendation of tenure, but the State Department allowed that employee to remain overseas and retain overseas benefits until the completion of his assignment, even though the employee and Ms. Beberman allegedly are of equal rank and have similar responsibilities. Compl. ¶¶ 12-17, 22-23. After completing his assignment and returning to the United States, the male employee is now allegedly receiving "Washington locality pay and a transit subsidy." Compl. ¶ 20.

Ms. Beberman requests that the court reinstate her to service at the embassy in Equatorial Guinea until the completion of her assignment there, thus enabling her to obtain the benefits she previously received, including hardship pay, service-needs differential, housing, overtime compensation, and participation in the student loan repayment program. Compl. ¶ 26. Ms. Beberman also requests Washington locality pay, temporary quarters service allowance, and transit subsidy benefits until she departs for Equatorial Guinea. Compl. ¶ 26. Additionally, Ms. Beberman seeks back pay for the benefits she lost when she was directed to leave Equatorial Guinea, repayment for transit subsidies she has not received since returning to Washington, D.C., and back pay for the temporary quarters service allowance she was denied upon being placed on separation orders and leaving Equatorial Guinea. Compl. ¶ 27.

### B. Ms. Beberman's Suit in the District Court

In May 2014, Ms. Beberman filed a complaint in the United States District Court for the District of the Virgin Islands against the State Department and Secretary of State John Kerry in his official capacity. *Beberman v. United States Dep't of State*, No. 2014-0020, 2016 WL 1181684, at *1 (D.V.I. Mar. 24, 2016) ("*Beberman I*"), *recons. denied*, 2016 WL 1312534 (D.V.I. Apr. 4, 2016) ("*Beberman II*"). In that suit, Ms. Beberman brought a gender discrimination claim under Title VII of the Civil Rights Act of 1964, Pub. L. No. 88-352, § 717, 78 Stat. 241, *as amended by* the Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, 86 Stat. 103, 111, an age discrimination claim under the Age Discrimination in Employment Act of 1967, Pub. L. No. 90-202, § 15, *as amended by* the Fair Labor Standards Amendments of

---

Notice of Related Agency Action, appended Decl. of Brian Wilson (Dec. 1, 2016) ¶ 4. Ms. Beberman has moved to strike defendant's notice of related agency action, contending that the agency's action is irrelevant to the court's inquiry into jurisdiction under 28 U.S.C. § 1500. Pl.'s Mot. to Strike Def.'s Notice of Related Agency Action at 3, ECF No. 11.

[4]Congress enacted the Equal Pay Act in 1963 as an amendment to the Fair Labor Standards Act, Pub. L. No. 75-718, 52 Stat. 1060 (1938) (codified at 29 U.S.C. §§ 201-19). *See Yant v. United States*, 588 F.3d 1369, 1371 (Fed. Cir. 2009). In 1974, Congress adopted a statutory amendment that applies the Equal Pay Act to the federal government. *See* Pub. L. No. 93-259, § 6(a)(1), 88 Stat. 55, 58 (codified at 29 U.S.C. § 203(e)(2)); *see also Jordan v. United States*, 122 Fed. Cl. 230, 241 n.21 (2015).

1974, Pub. L. No. 93-259, § 28(b)(2), 88 Stat. 55, 75, and a claim under the Privacy Act of 1974, Pub. L. No. 93-579, § 3, 88 Stat. 1896, 1901 (codified at 5 U.S.C. § 522a(g)(1)(D)). *Beberman I*, 2016 WL 1181684, at *1. However, Ms. Beberman withdrew the gender discrimination claim in her First Amended Complaint, and the Privacy Act claim was dismissed by agreement of the parties. *Id.*

The First Amended Complaint, filed May 22, 2014, alleged that Ms. Beberman's supervisor repeatedly discriminated against Ms. Beberman due to her "age and gender" while she was serving in Caracas, Venezuela. First Amended Complaint, *Beberman v. United States Dep't of State*, No. 2014-0020, ¶¶ 97-110 (D.V.I. May 22, 2014), Def.'s Mot. App. A12-A14. Ms. Beberman's supervisor allegedly treated her differently with respect to Ms. Beberman's work at Embassy Caracas. *See id.* After moving to Equatorial Guinea, and while the complaint was still pending, Ms. Beberman filed a motion for a temporary restraining order or preliminary injunction on March 20, 2016, in which Ms. Beberman requested that the district court direct the State Department to retain Ms. Beberman "in her current assignment at the U.S. Embassy in Malabo, Equatorial Guinea until she fulfills her assignment in December 2017." *Beberman I*, 2016 WL 1181684, at *2. Ms. Beberman claimed that her supervisor's "discriminatory animus" caused the denial of tenure, which resulted in the expiration of her limited career appointment. *Beberman II*, 2016 WL 1312534, at *1. In support of the motion, Ms. Beberman argued that a departure from Equatorial Guinea would result in "irreparable harm" because she would be required to leave her residence and return to Washington, D.C., and because she would lose "hardship pay, service[-]needs differential, [and] access to the Student Loan Repayment Program." *Id.* at *3. The district court denied the motion and Ms. Beberman's subsequent motion for reconsideration. *See generally Beberman I*, 2016 WL 1181684; *Beberman II*, 2016 WL 1312534.

Ms. Beberman filed a notice of appeal and an urgent motion for an injunction, but the United States Court of Appeals for the Third Circuit denied the motion on April 5, 2016 without addressing the pending appeal. Order, *Beberman v. United States Dep't of State*, No. 16-1788 (3d Cir. Apr. 5, 2016), Def.'s Mot. App. A107. On June 27, 2016, Ms. Beberman filed a brief in support of her appeal of the district court's denial of injunctive relief. Brief of Appellant, *Beberman v. United States Dep't of State*, No. 16-1788 (3d Cir. June 27, 2016) ("Appellant's Br."), Def.'s Mot. App. A108-A186. In that brief, Ms. Beberman stated that she had sought injunctive relief in March 2016 "to remain at Embassy Malabo, because [the government's] discriminatory and retaliatory animus proximately caused her to be denied tenure and [the government] directed her to depart Embassy Malabo for Washington in the middle of her three-year assignment." Appellant's Br. at 4, Def.'s Mot. App. A121. Ms. Beberman asserted that the district court improperly denied her "request to complete her assignment in Equatorial Guinea." Appellant's Br. at 38, Def.'s Mot. App. A155.

In support of her appeal for injunctive relief, Ms. Beberman argued that she adequately demonstrated irreparable harm, likelihood of success on the merits, and public interest in favor of relief. *See* Appellant's Br. at 36-65, Def.'s Mot. App. A153-A182. Specifically, Ms. Beberman claimed that without a preliminary injunction or temporary restraining order, she would suffer irreparable harm by "being forced to give up her position . . . at Embassy Malabo and . . . take up an unspecified position in Washington." Appellant's Br. at 25, Def.'s Mot. App. A142; *see also*

4

Appellant's Br. at 40, 44-45, 66-67, Def.'s Mot. App. A157, A161-62, A183-84. Ms. Beberman noted that her departure would result in the loss of hardship benefits, service-needs differential, and student loan repayments. Appellant's Br. at 48, Def.'s Mot. App. A165; *see also* Appellant's Br. at 42, Def.'s Mot. App. A159 (arguing that Ms. Beberman's position in Equatorial Guinea was unique due to the hardship and service-needs differential associated with the position); Appellant's Br. at 44-45, Def.'s Mot. App. A161-A162 (claiming that Ms. Beberman could no longer participate in the student loan repayment program if transferred to Washington, D.C.). Ms. Beberman also noted she would suffer harm while in Washington, D.C. because "she would not be eligible for Washington locality pay, per diem, or home service transfer allowance[,] and would not be allowed access to her household effects." Appellant's Br. at 16, Def.'s Mot. App. A133. In addressing the public interest aspect of the district court's analysis, Ms. Beberman stated that the directive to depart from Equatorial Guinea resulted from her denial of tenure, "which was tainted by discriminatory animus." Appellant's Br. at 63, Def.'s Mot. App. A180; *see also* Appellant's Br. at 8, Def.'s Mot. App. A125 (noting that Ms. Beberman did not want her assignment to end based upon "the long lasting effects of past discrimination"); Appellant's Br. at 64, Def.'s Mot. App. A181 (arguing that the government failed to stop the discrimination against Ms. Beberman, and instead took further adverse action by removing her from Equatorial Guinea and sending her to Washington, D.C.). Ms. Beberman's appeal remains pending. *Beberman v. United States Dep't of State*, No. 2014-0020, *appeal docketed*, No. 16-1788 (3d Cir. Apr. 4, 2016).[5]

### C. The Government's Pending Motion to Dismiss or Stay the Case

The government seeks to dismiss Ms. Beberman's complaint pursuant to 28 U.S.C. § 1500. Def.'s Mot. The government argues that under 28 U.S.C. § 1500, this court does not have jurisdiction over Ms. Beberman's suit because she has an earlier-filed pending suit in the district court and an earlier-filed pending appeal in the Third Circuit, and those pending suits are "for or in respect to" the same claims at issue here. Def.'s Mot. at 7-9; Def.'s Reply in Support of Def.'s Mot. to Dismiss Pursuant to 28 U.S.C. § 1500 or, in the Alternative, Mot. to Stay ("Def.'s Reply") at 1-5, ECF No. 8. Ms. Beberman opposes this motion, arguing instead that the claims in this court are based on different operative facts than those alleged in the earlier-filed claims in the district court. Pl.'s Opp'n at 1-4. Alternatively, the government requests that the court stay Ms. Beberman's suit until her claims in the district court are resolved, Def.'s Mot. at 9-10, which

---

[5]On July 19, 2016, the district court stayed proceedings before it. Order, *Beberman v. United States Dep't of State*, No. 2014-0020 (D.V.I. July 19, 2016), Def.'s Mot. App. A228. On September 7, 2016, subsequent to filing suit in this court, Ms. Beberman moved for leave to file a Fourth Amended Complaint in the district court. Fourth Amended Complaint, *Beberman v. United States Dep't of State*, No. 2014-0020 (D.V.I. Sept. 7, 2016), Def.'s Mot. App. A194; *see also* Def.'s Mot. App. A229. On November 8, 2016, the district court granted Ms. Beberman's motion to lift the stay for the limited purpose of filing a motion to amend the complaint to meet the statute of limitations. Order, *Beberman v. v. United States Dep't of State*, No. 2014-0020 (D.V.I. Nov. 8, 2016). Ms. Beberman filed a fifth amended complaint on the same day. Fifth Amended Complaint, *Beberman v. United States Dep't of State*, No. 2014-0020 (D.V.I. Nov. 8, 2016).

Ms. Beberman also opposes, Pl.'s Opp'n at 9-13. The motion has been briefed and was addressed at a hearing on December 2, 2016.

## STANDARDS FOR DECISION

As plaintiff, Ms. Beberman has the burden of establishing jurisdiction. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). In determining whether the court has jurisdiction, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).

Under the Tucker Act, this court has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). This court generally has jurisdiction under the Tucker Act over claims brought in respect of the Equal Pay Act. *See, e.g., Harbuck v. United States*, 378 F.3d 1324, 1330 (Fed. Cir. 2004); *Jordan*, 122 Fed. Cl. at 238 (citations omitted). Nonetheless, 28 U.S.C. § 1500 acts as a jurisdictional limitation. When it applies, this court lacks jurisdiction and must dismiss the complaint. *See* 28 U.S.C. § 1500; *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 314, 318 (2011).

## ANALYSIS

Section 1500 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. Section 1500 originates from a Reconstruction-era statute that was enacted to prevent duplicative suits by cotton claimants seeking to recover for the value of cotton taken by the government during the Civil War. *See Keene Corp. v. United States*, 508 U.S. 200, 206-07 (1993); *Nez Perce Tribe v. United States*, 83 Fed. Cl. 186, 189 (2008). The Supreme Court has explained that the purpose of the statute is to "save the [g]overnment from burdens of redundant litigation." *Tohono*, 563 U.S. at 315. In evaluating whether Section 1500 applies, the court must determine "(1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013) (citing *Trusted Integration*, 659 F.3d at 1163-64 (in turn citing *Tohono*, 563 U.S. at 309-11)).

As to the first prong, a suit is pending from the time it is filed until the entry of final judgment, and is again pending when a motion for reconsideration or appeal is filed. *Brandt*, 710 F.3d at 1379-80. The court assesses whether an earlier-filed suit is pending "at the time the complaint is filed" in this court. *Id.* at 1375 (citing *Keene*, 508 U.S. at 207 ("[T]he jurisdiction of the [c]ourt depends upon the state of things at the time of the action brought.")).

Here, Ms. Beberman concedes that she filed suit against the State Department in the district court prior to bringing claims before this court, and such suit remains pending. Pl.'s Opp'n at 2. Ms. Beberman also appealed the district court's denial of her motion for preliminary injunctive relief before she filed suit in this court, and that appeal is pending as well. *See generally* Appellant's Br., Def.'s Mot. App. A108-A186. The claims presented in a pending appeal before an appellate court are deemed pending claims for purposes of applying Section 1500. *See, e.g., Williams v. United States*, 71 Fed. Cl. 194, 199 (2006) (holding that plaintiff had a pending claim in an appeal before the D.C. Circuit at the time plaintiff filed suit in the Court of Federal Claims); *Wilson v. United States*, 32 Fed. Cl. 794, 795-96 (1995) (same); *see also Hornback v. United States*, 36 Fed. Cl. 552, 555-56 (1996) (dismissing plaintiff's complaint pursuant to Section 1500 because the complaint addressed the same claim as plaintiff's earlier-filed pending appeal in the Ninth Circuit). Thus, Ms. Beberman's First Amended Complaint in the district court and appeal in the Third Circuit constitute earlier-filed pending suits.

The government urges reliance on that context for its motion, but it also attempts to rely on allegations in Ms. Beberman's Fourth Amended Complaint in the district court, filed September 7, 2016, after Ms. Beberman filed her complaint in this court. *See* Def.'s Mot. at 7-8. Because the inquiry as to applicability of Section 1500 is made as of the date of filing in this court, the court cannot consider Ms. Beberman's subsequently filed Fourth Amended Complaint in the district court. *See, e.g., Low v. United States*, 90 Fed. Cl. 447, 451 (2009) (explaining that unlike plaintiff's original complaint in the district court, plaintiff's amended district court complaint was "irrelevant" to the Section 1500 analysis because it was filed after plaintiff filed suit in this court).

Regarding the second prong, the Supreme Court has stated that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in [this court], if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Tohono*, 563 U.S. at 317. Notably, the inquiry focuses on the facts underlying the challenged government conduct, rather than the plaintiff's legal theories. *See, e.g., Central Pines Land Co. v. United States*, 697 F.3d 1360, 1365 (Fed. Cir. 2012) (finding a "substantial overlap of operative facts" because the two suits, "at best, repackaged the same conduct into two different theories"); *Trusted Integration*, 659 F.3d at 1164 ("Importantly, the legal theories underlying the asserted claims are not relevant to this inquiry.") (citing *Keene*, 508 U.S. at 210). Courts applying this test have distinguished "between background facts, which describe the context for the claims presented in each suit, and operative facts, which provide the essential elements of the government conduct at issue in the two suits." *United States Home Corp. v. United States*, 108 Fed. Cl. 191, 195 (2012) (citing *Central Pines Land Co.*, 697 F.3d at 1365; *Trusted Integration*, 659 F.3d at 1168), *aff'd*, 550 Fed. Appx. 895 (Fed. Cir. 2014). Although the operative facts must substantially overlap, they need not be identical. *Harbuck v. United States*, 58 Fed. Cl. 266, 269 (2003), *aff'd*, 378 F.3d 1324 (Fed. Cir. 2004).

7

Here, Ms. Beberman argues that the operative facts in the two suits are "completely different." Pl.'s Opp'n at 2. Specifically, Ms. Beberman focuses on her First Amended Complaint and motion for preliminary injunction in the district court, which she claims addressed the State Department's alleged age discrimination in 2012 in Caracas, Venezuela, and the impact of that discrimination on her employee evaluations and denial of tenure. *Id.* at 2-3. Ms. Beberman argues that her complaint in this court focuses on a different time period and different government action by addressing only the State Department's actions after the denial of tenure occurred. *Id.* at 3-4. In support, Ms. Beberman primarily relies on *Cooke v. United States*, 77 Fed. Cl. 173 (2007), where the court ruled that Section 1500 did not apply due to material factual differences between the two claims. In *Cooke*, plaintiff brought a gender discrimination claim under the Equal Pay Act in this court, and a retaliation claim under the Fair Labor Standards Act in the district court. *Id.* at 175, 177-78. The court held that plaintiff's retaliation claim related to "later and different conduct" as compared to the discrimination claim, explaining that the two claims involved "distinct time periods and distinct [g]overnment conduct." *Id.* at 177-78. Specifically, the gender discrimination pertained to alleged unequal pay between 1997 and 2005, whereas the retaliation claim related to changes in plaintiff's employment after February 2005, when plaintiff filed a formal complaint. *Id.* at 177.

Ms. Beberman's argument and reliance on *Cooke* might have been persuasive but for her request to the district court for temporary or preliminary injunctive relief and her subsequent appeal of the district court's denial of that relief. Although Ms. Beberman's First Amended Complaint related to alleged discrimination in Venezuela prior to the denial of tenure, Ms. Beberman's subsequent filings addressed events that occurred post-denial of tenure. In her currently pending appeal before the Third Circuit, which was filed before Ms. Beberman filed suit in this court, Ms. Beberman specifically challenged the State Department's 2016 directive for Ms. Beberman to leave Equatorial Guinea and return to Washington, D.C. *See, e.g.*, Appellant's Br. at 4, 38, Def.'s Mot. App. A121, A155. Unlike in *Cooke*, where the two suits involved distinct time periods and distinct government conduct, the critical facts and time periods underlying Ms. Beberman's claims are substantially the same in both suits even though her legal theories are somewhat different, albeit related. Ms. Beberman's pending appeal in the Third Circuit and complaint filed with this court both address the State Department's conduct after the denial of tenure in 2016, not before. *See generally* Compl.; Appellant's Br. Further, Ms. Beberman argues in both suits that the State Department wrongly directed her to leave Equatorial Guinea before the completion of her assignment, resulting in an alleged loss of benefits. Compl. ¶¶ 9-23; Appellant's Br. at 4, 16, 48, Def.'s Mot. App. A121, A133, A165. The State Department directive and loss of benefits are not mere background facts, but rather are critical to both Ms. Beberman's pending appeal and her complaint in this court. Thus, the two suits are based on substantially the same operative facts: Ms. Beberman's departure from Equatorial Guinea, the loss of overseas benefits, the lack of local benefits upon her return to Washington, D.C., and the State Department's alleged discriminatory basis.[6]

---

[6]Here, Ms. Beberman claims that the State Department directly discriminated against her by ordering her to leave Equatorial Guinea, whereas Ms. Beberman claims in her pending appeal before the Third Circuit that her departure was the consequence of previous discrimination. *Compare* Compl. (alleging that the government discriminated against Ms. Beberman on the basis of her sex when she was directed to leave Equatorial Guinea and return to Washington, D.C.),

8

The court's jurisdictional assessment is confirmed by principles of res judicata. *See Trusted Integration*, 659 F.3d at 1164; *United States Home Corp.*, 108 Fed. Cl. at 199-200 (citing *Trusted Integration*, 659 F.3d at 1170 n.5); *see also Tohono*, 563 U.S. at 315 ("Concentrating on operative facts is also consistent with the doctrine of claim preclusion, or res judicata, which bars repetitious suits involving the same cause of action . . . .") (internal quotation marks and citations omitted). As the Federal Circuit explained in *Trusted Integration*, the two relevant res judicata tests for purposes of a Section 1500 analysis are (1) "the act or contract test" and (2) "the evidence test." 659 F.3d at 1168-69 (citing *Tohono*, 563 U.S. at 315-16). "If two suits are determined to arise from the same claim under either of these res judicata tests, . . . application of the bar of [Section] 1500 is likely compelled." *Id.* at 1170 n.5.

Here, Ms. Beberman's pending suits require the Third Circuit and this court to examine the same evidence. The evidence test asks whether "the same evidence support[s] and establish[es] both the present and the former cause of action." *Trusted Integration*, 659 F.3d at 1169 (quoting *Tohono*, 563 U.S. at 316). In both Ms. Beberman's pending appeal and complaint before this court, Ms. Beberman's claims center on Ms. Beberman's departure from her post in Equatorial Guinea before the completion of her assignment, and whether such departure was the result of wrongful conduct by the State Department. Further, Ms. Beberman supports both suits by alleging that she has suffered harm as a result of her departure, specifically through the loss of hardship pay, service-needs differential, and student loan repayments, as well as the lack of local benefits in Washington, D.C. *See Winnebago Tribe of Neb. v. United States*, 101 Fed. Cl. 229, 233-34 (2011) (finding substantial factual overlap between two suits because, *inter alia*, both courts would be required to examine the same evidence in evaluating plaintiff's claims). Although Ms. Beberman's suit in the district court suit also encompasses events prior to the 2016 State Department directive, this alone does not change the court's conclusion. Ms. Beberman's allegations in this court are merely a "subset of the same factual allegations" presented in the district court and the Third Circuit. *See Harbuck*, 58 Fed. Cl. at 269-70.

---

*with* Appellant's Br. at 63, Def.'s Mot. App. A180 (stating that the directive to depart from Equatorial Guinea resulted from Ms. Beberman's denial of tenure, "which was tainted by discriminatory animus"). This distinction does not affect the outcome of the court's analysis. The critical facts regarding Ms. Beberman's departure from Equatorial Guinea and diminution in benefits remain the same. Additionally, both suits allege that but for the State Department's alleged discrimination, the harm to Ms. Beberman would not have occurred. The facts thus substantially overlap.

Correlatively, the fact that Ms. Beberman brought an age discrimination claim in the district court and a gender discrimination claim here does not alter the analysis. Both suits relate to alleged discrimination by the State Department, and Ms. Beberman's First Amended Complaint in the district court repeatedly referred to alleged discrimination based on "age *and gender.*" *See* First Amended Complaint, *Beberman v. United States Dep't of State*, No. 2014-0020, ¶¶ 97-110 (D.V.I. May 22, 2014), Def.'s Mot. App. A12-A14 (emphasis added). Regardless of Ms. Beberman's legal theories, the facts underlying her two claims are intertwined and thus the claims are based on substantially the same operative facts.

## CONCLUSION

For the reasons stated, the government's motion to dismiss pursuant to 28 U.S.C. § 1500 is GRANTED. This dismissal on jurisdictional grounds is without prejudice. The government's motion to stay is DENIED as moot.[7] The clerk shall enter judgment in accord with this disposition.

No costs.

It is so ORDERED.

_____
Charles F. Lettow
Judge

---

[7] Plaintiff's motion to strike defendant's notice of related agency action is DENIED.